# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-3932 |
| v. ) | |
| ) | Judge Amy J. St. Eve |
| WADE MALHAS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On November 5, 2015, the Court held an evidentiary hearing where Defendant had the burden of showing that he is not in possession or custody of the documents and records the Internal Revenue Service (IRS) sought in its summons. Defendant failed to satisfy his burden, and the Court grants the IRS's motion to enforce its summons. Defendant must comply with the summons and turn over all requested documents and records to the IRS by January 12, 2016.

## BACKGROUND

The Internal Revenue Service ("IRS") is investigating Wade Malhas's ("Malhas") tax liability for the years 2006 through 2008. (R. 2 at 1.) Specifically, the IRS is investigating Malhas's "tax deficiencies due to the establishment of undisclosed offshore accounts and foreign entities." (R. 23 at 2.)

On April 8, 2014, the IRS issued a summons ("summons") through Revenue Officer A. Segally directing Malhas to "testify and to produce books, records, and other data[.]" (R. 2 at 2.) On May 1, 2014, Malhas appeared in response to the summons; however, he failed to produce any documents. (R. 2, Ex. A at 3, ¶ 8.) After a "last chance letter" and an extension of time, Malhas failed to appear. (R.2 at 2.) As a result, the United States filed a "Petition to Enforce

IRS Summons" on May 4, 2015 (R. 2.) and a "Motion for an Order to Show Cause" on May 5, 2015. (R. 4.) On May 11, 2015, Malhas filed a "Response to United States' Motion for an Order to Show Cause," arguing that "he had no documentation regarding foreign accounts as requested in the IRS Summons"—known as the "lack of possession" defense. (R. 7 at 1.) On May 21, 2015, Malhas filed an affidavit to support his lack of possession defense. (R. 10.) Ultimately, on May 29, 2015, the Court denied the Government's "Motion for an Order to Show Cause" and dismissed its "Petition to Enforce IRS Summons." (R. 12.)

On June 26, 2015, the Government filed a motion for the Court to reconsider its ruling regarding the "Motion for An Order to Show Cause." (R. 14.) In support of its motion, the Government provided evidence and affidavits alleging Malhas was the beneficial owner of the accounts at issue, continued to make direct investments and withdrawals from the account during the relevant time frame, and had power of attorney over the accounts. (R. 14 at 4, Exs. A-M.) Put differently, the Government argued that Malhas failed to meet his "heavy burden" to successfully allege the "lack of possession" defense. (*Id.* at 2.) On July 1, 2015, the Court granted in part and denied in part the Government's Motion to Reconsider. (R. 17.)

On July 10, 2015, Malhas filed an affidavit, claiming again that the documents were not in his possession, custody, or control. (R. 18 at 1.) Further, Malhas alleged that he had "taken all reasonable steps to confirm" that the documents were not in his custody. (*Id.*)

On September 10, 2015, the government filed a Second Motion for an Order to Show Cause repeating the allegations from its first motion and citing, in part, Malhas's deposition taken on August 5, 2015. (R. 23.) The government argued Malhas's "blanket assertion[s]" were "not true" and failed to show "categorically and in detail why he is unable to comply." (R. 23 at 7.) On September 25, 2015, Defendant Malhas filed a Response. (R. 26.) Malhas pointed, for

2

the first time, to Exhibits F, G, L, and M from the government's Motion for Reconsideration. Specifically, Malhas argued that his control over the bank account at issue was cancelled on August 3, 2004 when a third party he has never met, Ms. Moosleeithner-Batliner, became an authorized signator and cancelled "the authorized signatory of Dr. Malhas." (R. 26 at 3.) Further, Malhas alleged that the bank transferred all assets from the account at issue to "Banque Baring Brothers Sturdaza" on September 24, 2008, rendering any attempt to contact "UBS for account documents . . . useless." (*Id.*)

On October 8, 2015, the Court determined that the IRS had demonstrated good faith in issuing its summons against Malhas. (R. 28 at 3, citing *United States v. Powell*, 379 U.S. 48, 57-58, 85 S. Ct. 248, 13 L. Ed. 2d 112 (1964)). The Court further concluded that Malhas had made "some threshold showing" in support of his affirmative defense. (*Id.* at 4, citing *United States v. Kis*, 658 F.2d 526, 539, n. 39 (7th Cir. 1981).) Thus, the Court scheduled an evidentiary hearing for November 5, 2015 to give Malhas the opportunity to establish his affirmative defense.

On November 3, 2015, however, Malhas filed an emergency motion requesting the Court to extend the November 5 evidentiary hearing for sixty days so that he could "take further steps to confirm that he is unable to comply with the IRS summons." (R. 29 at 2.) Specifically, Malhas argued that he "intend[ed] to issue written requests to both the Union Bank of Switzerland (UBS) and Banque Baring Brothers Sturdaza to forward to him, with a copy to the IRS, all records, statements and documents regarding any and all non-U.S. accounts, pertaining to Dr. Malhas . . . for the calendar years 2006, 2007, and 2008. (*Id.*) At the November 4, 2015 emergency motion hearing, Malhas acknowledged that, despite being approached by the IRS as early as early 2012 and learning of the November 5 evidentiary hearing on October 8, he had yet to make such contact with the banks at issue. Further, Malhas argued that the documents were

likely relevant, as he expected that some of the documents the banks could produce would go toward compliance with the IRS's summons. The Court denied Malhas's request to continue the November 5 evidentiary hearing. The Court further noted its surprise that Malhas had not previously sought these documents from the banks at issue.

The hearing took place on November 5. At the November 5 evidentiary hearing, Malhas made two arguments, in relevant part: 1) the IRS in fact possessed the requested documents, thereby rendering its petition invalid under the third *Powell* factor and 2) Malhas had previously shown that he was no longer in possession of the documents at issue through the signatory and asset-transfer documents described in his September 25 Response. Significantly, Malhas presented no evidence to support either argument at the hearing. The IRS's relevant response was two-fold: 1) the IRS's petition was valid under *Powell*, as the Court ruled in its October 8 Order, because the IRS specifically sought income documents not in its possession and 2) the numerous documents that the IRS presented in its September 10 motion illustrated that Malhas was connected to the banks at issue during the relevant time period. Specifically, the IRS argued that Agent Segally, in her second affidavit, discussed Malhas's "password" that allowed him to still access the relevant accounts even after being removed as a signatory.

## ANALYSIS

The crux of the issue is whether Malhas lacks possession of the documents and records the IRS seeks. Malhas has alleged he does not. The Court disagrees.

In *United States v. Clarke*, the United States Supreme Court provided a framework for IRS summons enforcement proceedings. 134 S. Ct. 2361, 189 L. Ed. 2d 330 (2014). The IRS has the duty to make "inquiries, determinations, and assessments of all taxes," using its congressionally granted power. *Id.* at 2365. One of those powers is the power to issue

summonses "for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability." *Id*. (citations and quotation marks omitted). Some summonses direct the taxpayer "to appear . . . and to provide sworn testimony or produce 'books, papers, records, or other data . . . relevant or material to [a tax] inquiry.'" *Id*., citing 26 U.S.C. §6201(a). If a taxpayer fails to comply with a summons, "the IRS may bring an enforcement action in district court." *Id*.

The IRS "need only demonstrate good faith in issuing the summons" to succeed in an enforcement action. *Id*. (citation and quotation marks omitted); *see also Kis*, 658 F.2d at 536 ("The burden is a slight one, for the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted."). Indeed, "[i]n order to gain the issuance of a show cause order, the [IRS] does need to meet any standard of probable cause, even if the . . . statute of limitations on ordinary tax liabilities has expired." *Kis*, 658 F.2d at 536. Instead, the IRS must simply establish "what has become known as the *Powell* factors": "'[1)] that the investigation will be conducted pursuant to a legitimate purpose; [2)] that the inquiry may be relevant to the purpose; [3)] that the information sought is not already within the [IRS's] possession; and [4)] that the administrative steps required by the [Internal Revenue] Code have been followed.'" *Clarke*, 134 S. Ct. at 2365, citing *Powell*, 379 U.S. at 57-58,. "[T]he court may ask only whether the IRS issued a summons in good faith [and], . . . absent contrary evidence, the IRS can satisfy that standard by submitting a simple affidavit from the investigating agent." *Id*. at 2367.

"A person receiving an IRS summons is, as we have often held, entitled to contest it in an enforcement proceeding." *Id*., citing *United States v. Bisceglia*, 420 U.S. 141, 146, 95 S. Ct.

5

915, 43 L. Ed. 2d 88 (1975). "In these proceedings, the taxpayer carries the burden of establishing affirmative defenses." *United States v. Seetapun*, 750 F.2d 601, 604 (7th Cir. 1984), citing *Kis*, 658 F.2d at 542. One "appropriate ground" to challenge IRS summonses is the "lack of possession or control of records." *United States v. Rylander*, 460 U.S. 752, 757, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983) (citation omitted). To do so, the taxpayer's "responsibilities surely go further than a *pro forma* demand and cursory search for records." *Seetapun*, 750 F.2d at 605. Indeed, "if at this stage the taxpayer cannot refute the government's prima facie *Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Kis*, 658 F.2d at 539, citing *Powell*, 379 U.S. at 58.

If, however, the taxpayer "make[s] some threshold showing" in support of his affirmative defense, he may be "entitled to the hearing." *Id*. at 539, n. 39; *see also Powell*, 379 U.S. at 58, n. 18 (referring to the "adversary hearing to which the taxpayer is entitled before enforcement is ordered"). Particularly, when taxpayers allege they cannot comply with a summons because they lack possession of requested documents or records, evidentiary hearings at the enforcement stage become important. Taxpayers cannot allege for the first time during contempt proceedings that they lacked possession of the relevant documents during the enforcement proceedings. *See Rylander*, 460 U.S. at 757 ("It would be a disservice to the law if we were to depart from the long standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy."). Some Circuit Courts of Appeals have interpreted the Supreme Court's admonition as a requirement that district courts definitively decide whether taxpayers possess the documents before ordering production under penalty of contempt. *See United States v. Gippetti*,

153 F. App'x. 865, 868 (3d Cir. 2005) ("[A]n express determination of possession or control is required. If the District Court determines that [taxpayer] does not possess or have control over the records the government is seeking—and it is [taxpayer's] burden—enforcement should be denied. If, however, the Court determines that he does possess or have control over those records, failure to produce the records will be on pain of contempt."); *see also United States v. Barth*, 745 F.2d 184, 187 (2d Cir. 1984) ("Before ordering production on penalty of contempt, the district court should expressly determine that the respondent possesses the summoned documents.").

Once the district court has determined that an evidentiary hearing is warranted, "the burden still rests heavily on the taxpayer." *Kis*, 658 F.2d at 544. Indeed, "[i]n most cases in which a hearing is held, the district court should be able either to order or to deny enforcement of the summons at that time." *Id*. In sum, the burden rests squarely on the defendant's shoulders at the evidentiary hearing to rebut the government's summons.

A number of Circuit Courts of Appeals have detailed what the taxpayer must show at this hearing to successfully illustrate that he "lacks possession" of the relevant documents. Some have held that it is within the district court's discretion to simply determine whether the facts show that the taxpayer does, or does not, possess the relevant documents. *See Barth*, 745 F.2d at 187-88 (directing the lower court to "rule explicitly on [the defendant's] defense of nonpossession based on the present record and on any additional evidence the parties may wish to present" and concluding that if the lower court "finds that [the defendant] possesses the [documents], then enforcement may be granted; if [the court] determines that [the defendant] does not possess them, then enforcement should be denied"); *see also Gippetti*, 153 F. App'x. at 868, citing *Barth*, 745 F.2d at 187. Others have established the standard in more detail.

Specifically, they have stated that, "the party resisting enforcement bears the burden of producing credible evidence that he does not possess or control the documents sought." *United States v. Billie*, 611 Fed. App'x. 608, 610 (11th Cir. 2015), quoting *United States v. Huckaby*, 776 F.2d 564, 567 (5th Cir. 1985). Importantly, this "credible evidence" standard operates on a sliding scale: the more the government's evidence suggests the defendant possesses the documents at issue, the heavier the defendant's burden to successfully demonstrate that he does not. *Id*. at 610-11 ("[T]he burden would be heavy in the present circumstances—[the defendant's] prior production of materials and his title as Custodian of Records strongly suggest he maintains control and possession.").

Here, Malhas has failed to satisfy his burden regardless of what standard the Court applies. Specifically, Malhas did not present any evidence at the November 5 evidentiary hearing, let alone "credible evidence" that he did not possess the documents at issue. *Huckaby*, 775 F.2d at 567. As the government noted, the Court has already found that the IRS's petition was valid under *Powell*, rendering Malhas's eleventh hour argument otherwise, moot. Further, the IRS's plethora of documents and records illustrating Malhas's connections with the international banks and the accounts at issue overshadowed Malhas's cursory references to the signatory and asset-transfer documents. Specifically, the IRS undercut the importance by pointing out Malhas's "password" that enabled him to access the accounts at issue without a signature. Thus, Malhas's utter lack of evidence left him unable to convince the Court that he does not have possession or custody of the documents. Indeed, even Malhas implied just the opposite. In his November 3 emergency motion, Malhas suggested the banks at issue may possess the summonsed documents, admitting that "[i]f the banks produce documents sought by Petitioner in response to Dr. Malhas' request, compliance would presumably no longer be an

issue, and enforcement will be moot." (R. 29 at 2.) Similarly, when asked by the Court at the November 4 emergency motion hearing what he expected to receive from the banks, Malhas admitted that he expected the institutions could produce relevant documents that may go toward compliance with the IRS's summons. These admissions cut against any argument that Malhas does not possess the documents, and it certainly does not satisfy his heavy burden at this stage. *See Kis*, 658 F.2d at 544. Accordingly, the Court concludes that Malhas has failed to meet his heavy burden, and the IRS has presented compelling evidence that he possesses or has custody of the documents and records the IRS seeks. The Court, therefore, orders him to comply with the IRS's summons by January 12, 2016.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant has failed to satisfy his burden to support his "lack of possession" defense. As a result, the Court grants the government's motion and enforces the summons. Defendant is ordered to comply with the IRS summons by January 12, 2016.

**DATED: November 10, 2015**                    **ENTERED**

                                                                                    _____
                                                                                    AMY J. ST. EVE
                                                                                    United States District Court Judge

9